The STATE of Ohio, Appellee,

v.

MAYS, Appellant.

[Cite as *State v. Mays* (1995), 104 Ohio App.3d 241.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 94–CA–19.

Decided May 31, 1995.

242

*Michael Sheils,* Springfield Chief Prosecutor, for appellee.

*Shawn A. Thomas,* for appellant.

FAIN, Judge.

Defendant-appellant, Sultan S. Mays, appeals from his conviction and sentence for discharging a firearm within the city limits of Springfield, Ohio, in violation of Springfield Codified Ordinances 549.02. Mays contends that the trial court was without jurisdiction to find him guilty on his plea of no contest because the ordinance was misnumbered in the complaint, that the trial court erred in denying his motion to suppress evidence obtained as a result of an unlawful stop, that the trial court erred in denying his motion to suppress evidence obtained as a result of an unlawful arrest, and that the sentence imposed was excessive.

We conclude that the misnumbering of the ordinance in the complaint did not deprive the complaint of its essential purpose of notifying Mays of the offense with which he was charged, so as to render the trial court without jurisdiction to accept his no contest plea, that there is evidence in the record from which the trial court could find that the initial investigative stop of Mays was not unlawful, and that there is evidence in the record from which the trial court could find that Mays was not arrested until there was probable cause to make an arrest.

With respect to Mays's contention that his sentence was excessive, we conclude that the thirty-day jail term and the $250 fine, being within the limits prescribed by the ordinance, were not unlawful. However, we conclude that the trial court was without authority to suspend Mays's driver's license. Accordingly, that part of the judgment of the trial court ordering the suspension of Mays's driver's license is vacated; and in all other respects, the judgment of the trial court is affirmed.

I

At some time during the lunch hour on Tuesday, December 7, 1993, six to eight shots were fired by one or more guns wielded within a group of six to eight

individuals in downtown Springfield. The earliest report of these gunshots appears to have been received by the police at 12:56 p.m.

According to one eyewitness, the group broke up, with all but two of the individuals getting into three cars and driving away, and two of the individuals running past the eyewitness.

Darwin Hicks, a Springfield police officer, about twenty to twenty-five minutes after the initial report, saw two individuals walking together, one of whom matched one of the descriptions of the individuals involved in the shooting incident. Hicks asked them their names. One was Mays, the other was Vincent Fisher. Hicks then ascertained that Fisher was reported to have been one of the individuals involved in the shooting incident. Hicks then frisked both Fisher and Mays for weapons and, with the assistance of two other officers who joined him, put Fisher and Mays in handcuffs and transported them, in the back of a police van, to the scene of the shooting incident. There, witnesses who had been questioned and were still at the scene positively identified Mays as one of the individuals involved in the shooting incident.

Mays was arrested and charged with aggravated menacing, in violation of R.C. 2903.21, and discharging a firearm within the Springfield city limits. The complaint specified Springfield Codified Ordinances 549.12 for the discharging a firearm charge. The codified ordinances of the city of Springfield has no Section 549.12. Section 549.02 is the section creating the offense of discharging a firearm within city limits. The complaint alleged that Mays "did discharge any air gun, rifle, shotgun, revolver, pistol or other firearm within the corporate limits of the Municipality." This is in violation of Springfield Codified Ordinances 549.02.

Mays filed a motion to suppress, which was denied after a hearing on the motion. Mays then pled no contest to the discharging firearms charge, and the aggravated menacing charge was dismissed. Mays was found guilty of the discharging firearms charge, and was sentenced to thirty days in jail, a $250 fine, court costs, and the suspension of his license to operate a motor vehicle for one year. From his conviction and sentence, Mays appeals.

## II

Mays's First Assignment of Error is as follows:

"The trial court was without jurisdiction to make any finding on appellant's no contest plea."

◼ Mays contends that because the complaint specified Section 549.12 as the section of the applicable ordinance, a nonexistent section, the complaint is jurisdictionally defective because it fails to comply with the requirement of Crim.R. 3 that the complaint "shall also state the numerical designation of the

applicable statute or ordinance." In support of this assignment of error, Mays cites *State v. Coldwell* (1982), 3 Ohio App.3d 283, 3 OBR 328, 445 N.E.2d 257.

The state originally confessed error with respect to Mays's first assignment of error. However, after this court in its decision and entry of February 17, 1995 indicated some reluctance to accept that confession of error, and ordered the parties to file additional briefs, the state filed a supplemental brief in which it has contended that *State v. Coldwell, supra,* is distinguishable, and that Mays's first assignment of error is not well taken.

In *Coldwell, supra,* a defendant was charged with motor vehicle weight load violations proscribed by R.C. 5577.04(C). As the court noted, at the time of the alleged offense division (C) was no longer part of the statute. Furthermore, as the court noted, the provisions that had been in division (C) were not simply transferred to some other division of the statute, but were spread among several provisions. Therefore, no one could be expected to be able to determine what section or sections of the Revised Code the defendant in that case was alleged to have violated. Accordingly, the court in *Coldwell* declined to assume that the defendant-appellant in that case had not been misled by the use of the nonexistent section as the basis for the criminal charge. *Id.* at 285, 3 OBR at 330, 445 N.E.2d at 259, fn. 3. As the cited footnote in *Coldwell* notes, Crim.R. 7(B) includes a provision that "[e]rror in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant." Although Crim.R. 7(B) applies to indictments or informations, as footnote 3 in *Coldwell* notes, it may by implication also be said to apply to complaints.

In the case before us, the error in the numerical designation was obvious. There was no Section 549.12 of the Springfield Codified Ordinances, and the section providing for the offense with which Mays was charged was clearly Section 549.02. In other words, the first digit after the decimal was mistakenly shown as "1" when it should have been "0." There would appear to be no reasonable possibility that Mays could have been misled by the error in the numerical designation.

In a converse situation, the failure to include an essential element of the charge in the text of a complaint was held not to have been cured by specification of the correct numerical designation in *State v. Burgun* (1976), 49 Ohio App.2d 112, 119–120, 3 O.O.3d 177, 181–182, 359 N.E.2d 1018, 1023–1024. In that case, the defendant was charged with pandering. An essential element of that offense was that the defendant, a projectionist in an adult entertainment center, knew that the material she was exhibiting was obscene. There was no allegation to this

effect in the complaint, although the section number referred to a section that included that element. In that case, it was held that the essential purpose of the complaint was to put the defendant on notice of the charge against her, and that the mere inclusion of the correct section of the statute or ordinance under which she was charged was not sufficient to cure the defect in the text of the complaint. Similarly, where the text of the complaint is sufficient to satisfy the essential purpose of placing the defendant on notice of the charge against him, a misnumbering of the section of the applicable statute or ordinance having no tendency to mislead the defendant as to the nature of the offense with which he was charged would not, in our view, constitute a defect of jurisdictional magnitude.

In *State v. Broughton* (1988), 51 Ohio App.3d 10, 553 N.E.2d 1380, a defendant was charged with disorderly conduct. The complaint specified R.C. 2917.11(B), but did not specify whether the defendant was being charged under subsection (1) or subsection (2) of the statute. These subsections specified two different offenses, with different elements. The court held that it is not essential that a complaint set forth the particular subsection of a statute or ordinance that the defendant is charged with having violated, so long as the text of the complaint sufficiently specifies the particular subsection that the defendant is charged with having violated. In other words, a mistake in the number of the statute or ordinance is not a defect of jurisdictional magnitude so long as the complaint performs its essential function of informing the defendant of the nature of the offense charged. *State v. Broughton, supra.*

If we were to hold, as Mays urges, that a misnumbering of the applicable statute or ordinance in a charging instrument is a defect of jurisdictional magnitude, great mischief would result. For example, following a capital murder conviction in which the defendant was accorded a perfectly fair trial, and following the full panoply of appellate proceedings, with no appellate court having found any error, the convicted murder defendant could have his conviction set aside because of a transposition of two digits in the original indictment, which had gone unnoticed and unremarked until that time. This would appear to us to be a grievious example of exalting form over substance.

Mays cites *State v. Bishop* (Dec. 3, 1993), Clark App. No. 3070, unreported, 1993 WL 495624, which, in his view, presented a much weaker case for finding a jurisdictional defect in a complaint, although we held in that case that the complaint was jurisdictionally defective. In that case, the complaint was unsigned.

In our view, Mays is mistaken in characterizing *State v. Bishop, supra,* as a weaker case for finding a jurisdictional defect. An unsigned complaint is merely a piece of paper. It does not acquire the essential characteristic of a

written allegation of wrongdoing until someone signs it, thereby alleging an offense, and subjecting the signer to possible liability for malicious prosecution.

Under the circumstances of the case before us, we conclude that there was no reasonable possibility that Mays was misled by the misnumbering of the section of the Springfield Codified Ordinances prohibiting the discharging of firearms within the city limits.

Accordingly, the complaint succeeded in its essential purpose of informing Mays of the offense with which he was charged.

Mays's first assignment of error is overruled.

### III

Mays's second assignment of error is as follows:

"The trial court erred in overruling appellant's motion to suppress evidence thereby violating appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 14 and 16 of the Ohio Constitution."

In his second assignment of error, Mays contends that his initial stop by Springfield Police Officer Darwin Hicks was unlawful because Hicks lacked a reasonable and articulable suspicion that Mays was involved in criminal activity.

A brief, investigatory stop of an individual does not violate the Fourth Amendment so long as the police officer can point to specific and articulable facts that give him a reasonable belief that the individual stop was engaged in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

In the case before us, Hicks stopped Mays and Fisher, who were walking together. Hicks had a description of one of the perpetrators of the offense that matched Fisher. However, he did not have a description that matched Mays. Mays contends that just because he was with Fisher at the time Fisher was stopped, there was no basis for stopping Mays.

Mays's argument would have great force if the stop had been more removed in time from the shooting incident that formed the basis of the offense. As Mays notes, the precise time of the offense cannot be ascertained from this record. However, it appears that the incident attracted the attention of a number of people, having happened in downtown Springfield during the noon hour, and that a number of people reported the incident to the police. The earliest such report appears to have been received just before 12:51 p.m. According to Hicks, he stopped Fisher and Mays twenty to twenty-five minutes after the initial report of the shooting incident. Under these circumstances, it is a reasonable inference that this stop occurred within a half-hour after the initial shooting incident.

Reports of witnesses indicated that there were from six to eight young men involved in the shooting incident, and that they dispersed immediately, with two of them running together by foot, and the others getting into three different cars.

Although the issue is close, we conclude that Hicks had a reasonable and articulable basis for suspecting that Fisher's companion was one of the persons who was involved in the shooting incident. We emphasize that this is a fact-sensitive determination. Had the stop occurred the following day, or even several hours later, it might not have been reasonable to have suspected a companion of one of the persons described as having been involved in the offense, merely by reason of that companionship, as possibly also having been involved in the offense.

Mays's second assignment of error is overruled.

## IV

Mays's third assignment of error is as follows:

"The trial court erred in overruling appellant's motion to suppress evidence based upon lack of probable cause to arrest thereby violating appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 14 and 16 of the Ohio Constitution."

In his third assignment of error, Mays contends that when he was handcuffed and put in the back of the police van for transportation to the scene, he was under arrest, and that Hicks was without probable cause to effect his arrest at that time.

We agree with Mays that although Hicks had a reasonable and articulable suspicion that Mays had been involved in criminal activity, that suspicion did not rise to the level of probable cause at that time. However, we do not agree with Mays that he was under arrest while he was being transported to the scene of the crime to be shown to witnesses who might identify him as one of the perpetrators.

Showing a suspect to eyewitnesses shortly after an offense has been committed is of great value in capturing the recollection of the witnesses while events are fresh in their minds. Even though a police officer does not have probable cause to arrest a suspect, it may be reasonable to transport the suspect to the scene of the offense for further investigation if the initial stop occurs not far from the scene, so that transportation to the scene may be accomplished without intruding greatly upon the suspect's liberty interests. *United States v. Wylie* (C.A.D.C.1977), 569 F.2d 62. See, also, *Dist. of Columbia v. M.M.* (D.C.App.1979), 407 A.2d 698, and *People v. Lippert* (Ill.1982), 89 Ill.2d 171, 59

Ill.Dec. 819, 432 N.E.2d 605. In both of these cases, the detention of a suspect and the transportation of the suspect to a nearby crime scene, shortly after the occurrence of the crime, for possible identification by eyewitnesses was held not to constitute an arrest for which full probable cause was required.

We conclude that Hicks acted reasonably in detaining Mays and transporting him to the scene of the crime for possible identification by the eyewitnesses.

Mays's third assignment of error is overruled.

## V

Mays's fourth assignment of error is as follows:

"The sentence imposed by the trial court is beyond the scope of the court's authority and is excessive given the facts of the case."

The sentence imposed by the trial court is beyond the scope of the court's authority and is excessive given the facts of the case.

Mays was sentenced to thirty days in jail, a $250 fine, court costs, and a one-year suspension of his driver's license. The jail term and fine were the maximum under the ordinance.

The imposition of a sentence is within the sound discretion of the trial court. No abuse of discretion can be found in a sentence for violation of an ordinance where the sentence is within prescribed limits, and there is nothing in the record to indicate that the trial court failed to give proper consideration to relevant facts. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph one of the syllabus. See, also, *State v. Adams* (1988), 37 Ohio St.3d 295, 297, 525 N.E.2d 1361, 1363; and *State v. Crouse* (1987), 39 Ohio App.3d 18, 528 N.E.2d 1283, paragraph one of the syllabus.

In accordance with the foregoing authority, we find no abuse of discretion in the jail term and fine imposed.

However, as the state concedes, there is no authority for the suspension of Mays's driver's license. Accordingly, we find Mays's fourth assignment of error well taken, to that extent.

Mays's fourth assignment of error is sustained in part and overruled in part.

## VI

Mays's fourth assignment of error having been sustained in part, and all of his other assignments of error having been overruled, that part of the judgment of

the trial court ordering the suspension of Mays's driver's license for one year is hereby vacated; in all other respects, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN, P.J., and GRADY, J., concur.