JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Jose Hill ("Hill") appeals his conviction for burglary, theft, and possession of criminal tools, claiming that the trial court erroneously denied his motion to suppress and that he was denied effective assistance of counsel. We find no merit to this appeal and affirm.
 {¶ 2} In January 2003, Hill was indicted for six counts of burglary, with notice of prior conviction, six counts of theft, and one count of possession of criminal tools. He moved to suppress oral statements he made prior to his arrest and a written statement given subsequent to his arrest. Specifically, he argued that the police failed to give him Miranda warnings and that they coerced his written statement by threatening to prosecute his girlfriend. The following evidence was presented at the hearing on his motion to suppress.
 {¶ 3} Cleveland Police Officer James Towles testified that on December 4, 2002, he responded to a radio broadcast regarding an attempted burglary in progress at 12902 Matherson Avenue. When he arrived at the scene at approximately 11:15 a.m., the perpetrator had already fled, proceeding southbound on Matherson. Officer Towles and his partner observed Hill coming from a driveway approximately seven houses away. Because Hill matched the description provided by the eyewitness, Officer Towles stopped him, informed him that he fit the description of a suspect in a burglary investigation, and inquired where he was coming from. Although he claimed that he was leaving his friend's house, the owner of the house told the officers that he did not know him.
 {¶ 4} Hill agreed to return to 12902 Matherson for a "cold-stand" identification, and Officer Towles patted him down and placed him in the zone car. After the eyewitness positively identified Hill as the man attempting to burglarize her neighbor's home, Officer Towles handcuffed Hill and read him hisMiranda rights.
 {¶ 5} On cross-examination, Officer Towles explained that Hill matched the basic description of the perpetrator because he was carrying a book bag. He also stated that given Hill's close proximity to the reported attempted burglary, he had reasonable suspicion to stop him.
 {¶ 6} Cleveland Police Commander Gary Gingell testified that he also arrived at 12902 Matherson in response to the radio broadcast. He corroborated Officer Towles' testimony, stating that Hill was identified by the eyewitness and that prior to being placed under arrest, he was given his Miranda rights.
 {¶ 7} Cleveland Police Det. Christian Suchan had been investigating several other burglaries in the area. He testified that at the time of Hill's arrest, the police recovered from his person a Ford Motor Company anniversary ring with the initials "VS," a silver Gucci watch, and a gold bracelet. Det. Suchan recognized the ring and watch as items reported stolen in other burglary cases. After obtaining the permission of Hill's girlfriend and co-lessee, the police searched Hill's apartment and discovered many other items that had been reported stolen.
 {¶ 8} On December 6, 2002, Det. Suchan confronted Hill with the information obtained from the search of his apartment. The detective testified that before interrogating Hill, he and his partner identified themselves and advised Hill of his Miranda
rights. Hill denied that his girlfriend had any involvement in the burglaries. Rather, he admitted that he alone stole the property and agreed to make a written statement, which he dictated to Det. Suchan. The statement consisted of three pages with Hill's signature at the bottom of each page, attesting that it was his statement. In the statement, he admitted having stolen various items from homes in the area but denied that he attempted to break into 12902 Matherson on December 4, 2002.
 {¶ 9} Contrary to the statements of the police officers, Hill testified that he was never advised of his Miranda rights at any point, including the day of his arrest and the interrogation later at the jail. He further testified that the police stopped him on December 4 because he fit the description of a suspect of an alleged crime in the area. Next, the police searched him, placed him in the back of their vehicle, and handcuffed him. The police then returned to the scene of the alleged crime. When the police asked him where he was coming from, he told them that he had just gotten off the bus and was coming from his mother's house.
 {¶ 10} In regard to the written statement, Hill testified that the police threatened to prosecute his girlfriend for receiving stolen property if he refused to give a statement. However, he denied making the statement produced by the prosecution. Although he admitted that his signature was at the bottom of each page, he claimed that he never read the statement nor made the statements contained within it. He explained he had purchased all the items found in his apartment as Christmas gifts a couple weeks earlier from a man in the neighborhood.
 {¶ 11} The trial court denied Hill's motion to suppress. In reaching this conclusion, the court stated:
"* * * The Court is convinced on the evidence and the law,and having an opportunity to observe the demeanor of all thepeople who testified, including the Officers and the Defendant,that the oral statement made by the Defendant at the time he wasfound, out on Matherson, on December 4th, the first set ofstatements are in fact statements, they were made afterlegitimate Terry stop for investigatory purposes, and then whenhe goes back up the street to 12902 Matherson, he is placed underarrest, and he was Mirandized.
 Then we go to December 6th oral statements. These areconsensual and given after the giving of Miranda rights, which Ifind to be given.
 I reject totally, the Defendant's story that the writtenstatement was not his written statement.
 It is not credible to suggest that the Officers took theDefendant Downtown, and in front of him asking questions, andthen in front of him write a fictional series of questions andanswers. * * *"
 {¶ 12} The case proceeded to a jury trial, at which Hill was found guilty of four counts of burglary, four counts of theft, and one count of possession of criminal tools. The court sentenced him to seven years in prison for each burglary count, eleven months for each theft count and the possession of criminal tools count, and ordered the terms to be served concurrently.
 {¶ 13} Hill appeals, raising two assignments of error.
 Motion to Suppress {¶ 14} In his first assignment of error, Hill argues that the trial court erred by denying his motion to suppress because the police did not have a reasonable suspicion to stop him and, thus, the oral and written statements stemming from the stop should have been excluded at trial.
 {¶ 15} Because Hill failed to raise this argument at the trial court, he has waived it on appeal. State v. Smith (1997),80 Ohio St.3d 89, 107. See, also, State v. Murphy (2001),91 Ohio St.3d 516, 531 (recognizing that even constitutional rights may be waived absent plain error). But even if Hill had preserved this issue, we find his argument lacks merit.
 {¶ 16} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988),38 Ohio St.3d 275, 277; State v. Fanning (1982), 1 Ohio St.3d 19, 20. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Curry
(1994), 95 Ohio App.3d 93, 96, citing State v. Schiebel (1990),55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id., citing State v. Claytor (1993), 85 Ohio App.3d 623, 627.
 {¶ 17} In the seminal case of Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Terryv. Ohio (1968), 392 U.S. 1, 9; see, also, State v. Andrews
(1991), 57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. SeeTerry, supra, at 27.
 {¶ 18} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. UnitedStates v. Arvizu (2002), 534 U.S. 266; Terry, supra, at 27. However, reviewing courts should not "demand scientific certainty" from law enforcement officers. Illinois v. Wardlow
(2000), 528 U.S. 119, 125. In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra, quoting, United States v.Cortez (1981), 449 U.S. 411, 417-418; State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus, citing State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.
 {¶ 19} Under this totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu, quoting Cortez,449 U.S. at 418. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement. Id. See, also, State v. Andrews
(1991), 57 Ohio St.3d 86, 87-88.
 {¶ 20} In the instant case, the court heard testimony from Officer Towles indicating that he stopped Hill because he matched the eyewitness description of the perpetrator. Moreover, Officer Towles further testified that Hill was found within minutes of the reported burglary and in the same neighborhood. Given Hill's physical resemblance to the perpetrator, including the fact that he was carrying a book bag, coupled with his close proximity to the reported burglary in both location and time, we find that the police had reasonable suspicion to stop him.
 {¶ 21} Hill also argues that even if the police had reasonable suspicion to stop him, they lacked probable cause to place him in their police vehicle to return to the scene and, moreover, to perform a weapons pat-down. In essence, Hill argues that the police action of performing a weapons pat-down and escorting him back to the scene of the alleged crime constituted an arrest. We disagree.
 {¶ 22} In State v. Mays (1995), 104 Ohio App.3d 241, the Second District Court of Appeals rejected this same argument and held that "the detention of a suspect and the transportation of the suspect to a nearby crime scene, shortly after the occurrence of the crime, for possible identification by eyewitnesses" did not constitute an arrest for which full probable cause was required. Id. at 249. In Mays, the defendant argued that the police officer's action of handcuffing the defendant and placing him in the back of the police van for transportation constituted a constructive arrest. In reaching its holding, the court reasoned that "even though a police officer does not have probable cause to arrest a suspect, it may be reasonable to transport the suspect to the scene of the offense for further investigation if the initial stop occurs not far from the scene, so that transportation to the scene may be accomplished without intruding greatly upon the suspect's liberty interests." Id., citing United States v. Wylie (1977), 186 U.S.App.D.C. 231.
 {¶ 23} Analogous to the situation in Mays, Hill was found near the crime scene, shortly after the crime was reported, and was asked to ride with the police to the scene for an eyewitness identification. Thus, we find that Hill was not "under arrest" and, therefore, probable cause was not required. Moreover, Hill consented to the police request to return to the scene of the crime for a "cold stand" identification. Finally, because Hill matched the description of the suspect and had agreed to return to the scene, it was reasonable for the police to pat him down for weapons as a safety precaution.
 {¶ 24} Accordingly, Hill's first assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 25} In his second assignment of error, Hill contends that he was denied effective assistance of counsel because trial counsel failed to make a Fourth Amendment challenge of the State's evidence. Specifically, Hill contends that the officers did not have a reasonable suspicion to stop him and, thus, had his counsel raised the issue at the suppression hearing, the oral and written statements stemming from the stop would have been excluded at trial.
 {¶ 26} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; Statev. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910; and Strickland v.Washington (1984), 466 U.S. 668.
 {¶ 27} To prevail on a claim of ineffective assistance of counsel, the appellant must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687.
 {¶ 28} Hill fails to demonstrate that his counsel's decision not to raise a Fourth Amendment challenge of the evidence was deficient. As discussed above, even if his counsel had raised such an argument, he would not have prevailed. Because the evidence demonstrated that Hill matched the eyewitness description and was found near the scene shortly after the crime, the police had reasonable suspicion to stop him. Moreover, in denying the motion to suppress, the trial court specifically noted that the officer's stop of Hill constituted a legitimate investigatory stop under Terry. Thus, because we found no meritorious Fourth Amendment issue, we cannot say that counsel was ineffective for failing to raise an argument that would have failed. See State v. Wade, Cuyahoga App. No. 81080, 2002-Ohio-6827, citing Kimmelman v. Morrison (1986),477 U.S. 365, 382.
 {¶ 29} Hill's second assignment of error is overruled.
 {¶ 30} The judgment is affirmed.
Judgment affirmed.
Kilbane, P.J., and Gallagher, J., concur.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.