DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Glenn Paintiff appeals from the judgment of the Medina County Court of Common Pleas rendering a verdict for Appellee Todd Eberhart ("Eberhart") on his malicious prosecution action and awarding Eberhart $8,000 in damages. This Court affirms.
 I. {¶ 2} Appellant, his brother, Russell Paintiff, and Eberhart are all neighbors who reside in Hinckley, Ohio. Eberhart and Appellant have lived next door to each other since approximately 1997. Appellant resides at his parent's home. In September 2000, Eberhart had an affair with Russell Paintiff's wife lasting approximately one week. Russell Paintiff testified that his wife informed him of the affair shortly after the affair ended.
 {¶ 3} On November 5, 2000, Russell Paintiff filed a police report against Eberhart, charging him with burglarizing his home. On March 13, 2001, Appellant filed a police report against Eberhart, alleging that he created excessive noise when he used the air brakes on his truck. On October 5, 2001, an anonymous zoning complaint was filed against Eberhart, alleging that he was operating a business out of his residence and parking commercial vehicles on his property. Appellant and Russell Paintiff filed another police report against Eberhart on October 20, 2001, charging him with trespassing and cutting trees on their property. As a result of the October 20, 2001 report, the police advised Eberhart to stay off Appellant's property.
 {¶ 4} Russell Paintiff filed another complaint against Eberhart on December 20, 2001 in which he alleged that Eberhart made crank phone calls to his residence. On December 30, 2001, Appellant filed yet another complaint alleging that Eberhart trespassed on his property. Eberhart's mother responded to the complaint and admitted that she entered Appellant's property but that she had permission from Appellant's father to traverse their property. Eberhart's mother also stated that she would stay off Appellant's property and would advise others to do the same.
 {¶ 5} In early February 2002, Russell Paintiff's attorney sent a letter to the Hinckley Police Chief requesting that the Chief charge Eberhart with felony arson, making harassing phone calls and trespassing on his property with a weapon. On June 8, 2002, Russell Paintiff filed another police report against Eberhart, accusing Eberhart of trying to hit Paintiff's son with his motorcycle. Eberhart was not charged with any of the offenses alleged in any complaint filed by Appellant and his brother other than the two complaints at issue in this matter.
 {¶ 6} The within action arises out of a December 1, 2001 incident wherein Eberhart, his mother, his neighbor, Russell Bengough and Bengough's father went hunting. The location of the hunting excursion is in dispute. Eberhart and Bengough testified that they hunted on Eberhart's property and that Eberhart did not enter Appellant's property during this time. Appellant and his brother contend that Eberhart entered Appellant's property and that they used a camcorder to record Eberhart trespassing on Appellant's property. Appellant called the police to report that Eberhart was trespassing on his property. Hinckley Police Officer John Huff responded to Appellant's call and traveled to Appellant's home where Appellant then showed him the videotape.
 {¶ 7} On December 11, 2001, Officer Huff called Appellant and requested that he come to the police station to sign the complaint against Eberhart. Appellant claims that he thought he was signing a complaint for trespassing and was confused to see that the complaint charged Eberhart with hunting without permission, a violation of R.C. 1533.17. According to Appellant, when he voiced his concern about the charge alleged in the complaint, he was told that hunting without permission was the same offense as trespassing. The Medina County Prosecutor pursued the action. On April 18, 2002, Medina Municipal Court dismissed the complaint as a result of a defect. The jurat listed the officer's name instead of the defendant's name.
 {¶ 8} Following the dismissal, the Medina County Prosecutor drafted a new complaint, which Appellant also signed. The second complaint, filed on April 20, 2002, was identical to the first complaint in all respects except that the second complaint included a corrected jurat clause. On May 22, 2002, the Prosecutor dismissed the second complaint because she did not believe the matter could be proven beyond a reasonable doubt.
 {¶ 9} On June 17, 2002, Eberhart filed a civil lawsuit against Appellant in which he alleged that Appellant initiated the criminal complaints for hunting without permission without probable cause and further, that Appellant initiated the complaints maliciously and with the knowledge that the complaints were false and with reckless regard to their falsity. Eberhart sought $25,000 for compensatory damages and $25,000 for punitive damages. The case was tried before a jury who awarded Appellee $8,000 in compensatory damages. The court entered judgment on the verdict on December 9, 2004. Appellant timely filed his notice of appeal, raising three assignments of error.
 II. ASSIGNMENT OF ERROR I
"THE APPELLEE FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT."
 ASSIGNMENT OF ERROR II
"THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Appellant's first two assignments of error have been combined for purposes of discussion. Appellant's first assignment of error challenges the sufficiency of the evidence. In his second assignment of error, Appellant argues that the jury's verdict is against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case.
 {¶ 11} As a preliminary matter, this Court notes that sufficiency of the evidence produced and weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
 {¶ 12} When an appellant challenges a judgment in a civil case as against the manifest weight of the evidence, an appellate court's standard of review is the same as that in a criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at *18. In determining whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 13} An appellate court that overturns a trial court's judgment as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. State v.Thompkins, 78 Ohio St.3d at 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *19. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 14} Therefore, we will address Appellant's claim that the jury verdict was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency. Appellant asserts that the jury improperly rendered a verdict in Eberhart's favor on his malicious civil prosecution claim, as there was a total lack of evidence regarding the first two elements. We disagree.
 {¶ 15} The Ohio Supreme Court has held that to prove malicious criminal prosecution, a plaintiff must show the following by the preponderance of the evidence: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." Trussell v. General Motors Corp. (1990),53 Ohio St.3d 142, syllabus.
 {¶ 16} Appellant does not dispute that Eberhart satisfied the third element of his claim, as he admits that the Prosecutor dismissed the hunting without permission complaint. We now consider whether Appellee met his burden of proof on the first two elements of malicious prosecution.
 {¶ 17} The first element of malicious prosecution requires that Eberhart demonstrate that the prosecution was instituted with malice. The Ohio Supreme Court has defined "malice" for purposes of a claim of malicious criminal prosecution as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v.Springfield Twp. (1990), 56 Ohio St.3d 82, 85. In evaluating whether proceedings were properly instituted, the finder of fact must determine whether the person who decided to prosecute had a valid basis for instituting the action. Id. "If the basis for prosecution cannot be shown, those who made the decision will appear to have acted with no basis — that is, maliciously." Id. Malice may be inferred by the absence of probable cause.Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus; Mayes v. Columbus (1995), 105 Ohio App.3d 728,737.
 {¶ 18} Under the second element of malicious prosecution, Eberhart must demonstrate that Appellant lacked probable cause to institute the hunting without permission complaints. To determine whether the criminal prosecution was undertaken without probable cause, we must examine the facts and circumstances actually known or reasonably within contemplation of Appellant when he instituted the complaint and consider what a reasonable person would have believed. Nahra v. The Coliseum (July 14, 1993), 9th Dist. No. 15854, at *13. A malicious prosecution action was taken without probable cause if:
"the defendants instituted or continued the prosecution without a `reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged." (Alterations sic.) Mayes,105 Ohio App.3d at 737, quoting McFinley v. Bethesda Oak Hosp.
(1992), 79 Ohio App.3d 613, 617.
 {¶ 19} With that guidance, we consider whether the jury could have reasonably concluded that Appellant acted with malice, or without probable cause, in instituting the hunting without permission charge against Eberhart.
 {¶ 20} R.C. 1533.17(A) prohibits hunting on private property without permission and provides:
"No person shall hunt or trap upon any lands, pond, lake, or private waters of another, except water claimed by riparian right of ownership in adjacent lands, or shoot, shoot at, catch, kill, injure, or pursue a wild bird, wild waterfowl, or wild animal thereon without obtaining written permission from the owner or the owner's authorized agent."
 {¶ 21} At the outset, we are unpersuaded by Appellant's claim that he did not actually institute the charges because he intended to file trespassing charges, not hunting without permission charges. When the Appellant arrived at the Prosecutor's office the first time and learned that the prepared charge was not trespassing, he could have declined to sign the affidavit. If he had any reservation, he had yet a second opportunity to decline when the corrected charges were prepared. On each occasion he took an oath that the factual allegations in the complaint were true. Had he declined to sign the charges, the investigative officer could have done so.
"An unsigned complaint is merely a piece of paper. It does not acquire the essential characteristic of a written allegation of wrongdoing until someone signs it, thereby alleging an offense, and subjecting the signer to possible liability for malicious prosecution." State v. Mays (1995), 104 Ohio App.3d 241,246-47.
 {¶ 22} Because Appellant signed both complaints charging Eberhart with hunting without permission, we find that Appellant instituted the charges.
 {¶ 23} At trial, Appellant testified that he videotaped Eberhart trespassing on his property on December 1, 2001, but that he inadvertently taped over the portion of the video that showed Eberhart in his "hunter orange", standing on his property. On cross-examination, Appellant testified:
Q. All right. Where was he when Russell and you were back there?
A. He was generally in the same area. I just — when I saw him, he was in hunter orange going away from the property, from the area where the — .
Q. At one point Mr. Eberhart waved at you, right, on the videotape?
A. Yes, he did.
Q. He waved at you?
A. Yes.
Q. That disappeared, didn't it — .
A. Yes, it did.
Q. — that video?
And what's left is a videotape that shows a blurred image that just as easily could be Sasquatch as Todd Eberhart; isn't that true?
A. There was — there was a video of him, actually.
Q. There was a video of some person by some tree, correct.
A. No. There was a video of Todd by the tree.
Q. Sir, are you telling me that the person who did not take that video and was not there could identify Todd in that?
A. I can't answer to that.
Q. The part where you could identify him where he was waving, that disappeared?
A. Yes, it did.
 {¶ 24} Russell Paintiff testified that he saw the videotape and observed Eberhart on Appellant's property. This videotape was not played during the trial. In contrast, Eberhart denied that he entered Appellant's property while hunting on December 1, 2001 and Bengough testified that he did not observe Eberhart enter onto Appellant's property on December 1, 2001, while the two were hunting.
 {¶ 25} Obviously, there was conflicting testimony as to whether Eberhart hunted on Appellant's property without permission on December 1, 2001. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." DeHass, 10 Ohio St.2d at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and found that Appellant instituted these charges without probable cause. Upon review of the testimony presented at trial and the absence of clear evidence that Eberhart was actually hunting on Appellant's property on December 1, 2001, we cannot find that the jury lost its way in resolving evidentiary conflicts and making credibility determinations. We cannot, therefore, find that the jury created a manifest miscarriage of justice and we will not disturb the jury's finding.
 {¶ 26} As malice may be inferred from the absence of probable cause, Appellant has met all elements of a malicious prosecution claim. We nonetheless note that the evidence presented overwhelmingly supports the finding that Appellant acted with malice in instituting the hunting without permission charge. Appellant, his brother, and Bengough all testified that Bengough entered Appellant's property on December 1, 2001 yet, Appellant did not initiate charges against Bengough for trespassing or hunting without permission. If Appellant actually sought to preclude all people from trespassing and/or hunting on his property without permission, he certainly could have also filed a complaint against Bengough.
 {¶ 27} The jury could also reasonably infer that Appellant's knowledge of the affair between Eberhart and his sister-in-law motivated him to seek revenge by filing the hunting without permission complaints, among others already filed, against Eberhart. Appellant testified that he first learned of Eberhart's September 2000 affair with his sister-in-law in September of 2001. In light of the parties' civil co-existence as neighbors until November 2000, two months after the affair, when Appellant and his brother began filing numerous complaints against Eberhart, the jury could have reasonably concluded that Appellant knew of the affair earlier than September 2001 and/or that the September 2000 affair motivated Appellant to file these charges. Moreover, neither Appellant nor his brother filed any complaints against Eberhart after he filed the malicious prosecution action.
 {¶ 28} After a review of the record, this Court cannot conclude that the jury created a manifest miscarriage of justice in determining that Appellant was liable for malicious prosecution. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at 5. Consequently, Appellant's first two assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"THE JURY'S VERDICT WAS EXCESSIVE AND BASED UPON THE INFLUENCE OF PASSION AND PREJUDICE."
 {¶ 29} In his third assignment of error, Appellant contends that the jury verdict awarding Eberhart $8,000 was excessive and resulted from the influence of passion and prejudice. Appellant specifically argues that the verdict was excessive because Eberhart failed to provide evidence of damages beyond his attorney fees. He contends that the jury acted under passion or prejudice when deciding to award Eberhart $8,000 in damages for Eberhart's malicious prosecution claim because they based their decision on the "the sins of Glenn Paintiff's brother." We disagree.
 {¶ 30} "It is the jury's function to assess the proper amount of damages and `generally it is not for a trial [or appellate] court to substitute its judgment for that of the trier-of-fact.'" (Alterations sic.) Isquick v. Dale Adams Enterprises, Inc., 9th Dist. No. 20839, 2002-Ohio-3988, at ¶ 35, quoting Betz v. TimkenMercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218. However, if the surrounding facts and circumstances of a case establish that the jury verdict was the result of passion and prejudice, then the verdict must be set aside. Akron-Canton Waste Oil, Inc. v.Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 610. The size of a verdict, without more, is insufficient to prove passion or prejudice. Edwards v. Haase (Aug. 1, 2001), 9th Dist. No. 3121-M, at *4; Weidner v. Blazic (1994),98 Ohio App.3d 321, 334-335. "There must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Edwards, supra, at *4, quoting Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 65. To determine whether passion or prejudice affected a damage award, an appellate court should "consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel or other improper conduct which can be said to have influenced the jury." Dillon v. Bundy (1991),72 Ohio App.3d 767, 774, citing Fromson Davis Co. v. Reider (1934),127 Ohio St. 564, paragraph one of the syllabus.
 {¶ 31} In the instant case, the record shows that the jury did not consider any incompetent evidence or improper argument by counsel. The jury did not witness any improper conduct by either party's counsel. The trial process went smoothly and the judge effectively controlled what evidence and arguments the attorneys could properly bring before the jury for the case. Both attorneys cooperated with the court's authority as to admissibility, respectfully submitted their arguments to the jury, and were considerate of each other's presentation of the case in controversy. Any evidence issues or arguments were properly addressed at sidebar between the attorneys and judge.
 {¶ 32} The jury had the task of calculating Eberhart's damages for subjective harms including embarrassment, humiliation, loss of time and loss of liberty, in addition to the attorney fees Eberhart expended in defending the complaints. Eberhart hired an attorney upon filing of the first complaint who charged $712.50 to defend Eberhart on the first complaint and $112.50 for Eberhart's defense on the second complaint. Eberhart testified as to the stress and headaches his mom experienced as a result of the charges filed against him. He described the booking process of being fingerprinted and posing for a mug shot at his small town police department. He also described the annoyance he experienced in trying to resolve this matter.
 {¶ 33} We find that once the jury found in favor of Eberhart on the malicious prosecution claim, it had a reasonable basis for determining the amount of damages it believed should be awarded to Eberhart. Appellant did not identify anything in the record that wrongfully inflamed the sensibilities of the jury. Even if testimony that Appellant and his brother began filing complaints against Eberhart after the affair influenced the jury's damage award, the jury could appropriately consider this evidence as it was relevant and admissible evidence regarding Appellant's possible motive for filing the hunting without permission complaints. The testimony provided by both parties was more than adequate to enable the jury to reasonably determine its verdict in favor of Eberhart and the subsequent compensatory damages he was entitled to receive.
 {¶ 34} In light of the testimony presented at trial, we find that the jury verdict was supported by the evidence and was not excessive. Appellant did not establish that the verdict resulted from jury passion and prejudice and the damages awarded to Eberhart were not overwhelmingly disproportionate. Appellant's third assignment of error is overruled.
 III. {¶ 35} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J. Batchelder, J. concur.