[Cite as *State v. Clark*, 2021-Ohio-559.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-300 |
| | | (C.P.C. No. 17CR-5659) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Carla Clark, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 2, 2021

**On brief**: *Dave Yost*, Attorney General, *Kristin S. Pe*, and *Ben Karrasch*, for appellee.

**On brief**: *Carla Clark*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, Carla Clark, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty, pursuant to jury verdict, of one count of theft and one count of Medicaid fraud. For the reasons which follow, we affirm.

{¶ 2} By indictment filed October 17, 2017, plaintiff-appellee, State of Ohio, charged appellant with one count of grand theft in violation of R.C. 2913.02(A)(3), a felony of the fourth degree, and one count of Medicaid fraud in violation of R.C. 2913.40(B), a felony of the fourth degree. The indictment alleged conduct by appellant occurring from on or about June 2 to on or about November 20, 2015. The charges arose from appellant's role as a manager at Caregivers Health Services, Inc. ("Caregivers"), a home healthcare agency.

{¶ 3}    Caregivers was authorized to provide care to Medicaid recipients and receive payments from the Medicaid program pursuant to a provider agreement with the Ohio Department of Medicaid ("ODM"). Christine Cooper ("Ms. Cooper") was a Medicaid recipient during the timeframe specified in the indictment.

{¶ 4}    Ms. Cooper was a non-verbal quadriplegic who required the use of a feeding tube, a ventilator, and a catheter to survive. Ms. Cooper's daughter, Chinella Cooper ("Chinella"), had the primary responsibility for ensuring that her mother received the medical care she needed. In 2015, the state approved Ms. Cooper for 24-hour a day nursing care. Shortly thereafter, appellant contacted Chinella to offer her Caregivers' home health services. Chinella informed appellant she "was looking for 24-hour care" and appellant told Chinella "she would try and provide [her] with that." (Tr. Vol. II at 113-14.)  Caregivers began providing Ms. Cooper with in-home nursing services.

{¶ 5}    The Caregivers employees worked individually with Ms. Cooper. Initially, Amanda Brewer worked with Ms. Cooper Monday through Friday from 8:00 a.m. to 4:00 p.m., and Lashara Kornegay worked after Brewer from 4:00 p.m. to 7:30 p.m. Caregivers never provided Ms. Cooper with a nurse to work a third shift overnight. Kornegay eventually left Caregivers and her last shift with Ms. Cooper occurred on May 12, 2015. Carla Edmonds began providing nursing services to Ms. Cooper in June 2015. Brewer left Caregivers on October 12, 2015.

{¶ 6}    Although Kornegay and Brewer were licensed nurses, Edmonds nursing license was suspended throughout the timeframe specified in the indictment. Edmonds explained at trial that appellant knew Edmonds' "nursing license wasn't active," but that appellant instructed Edmonds to provide nursing services to Ms. Cooper anyway. The nurses had to fill out nursing notes and timesheets documenting each shift with Ms. Cooper. Appellant instructed Edmonds to put Kornegay's name on her nursing notes and timesheets "basically as a cover-up." (Tr. Vol. II at 193.) Appellant paid Edmonds in cash for the nursing services she provided to Ms. Cooper.

{¶ 7}    One day Chinella discovered nursing notes in the house from June and July 2015 in Kornegay's name, which Chinella knew constituted "incorrect information." (State's Ex. 20; Tr. Vol. II at 124.) Chinella contacted the Ohio Attorney General's Office and

submitted a complaint regarding Caregivers after she discovered Edmonds' nursing license was suspended.

{¶ 8} Jolene Shepherd, a special agent in the healthcare fraud section of the Ohio Attorney General's Office, began investigating Caregivers following Chinella's complaint. Shepherd obtained nursing notes and timesheets regarding Ms. Cooper from Caregivers, Caregivers' banking records from Chase Bank, and Caregivers' billing information from United Healthcare ("United"). United managed the care of Ohio Medicaid recipients pursuant to a contract with the state and paid out ODM funds to Ohio Medicaid providers. Shepherd explained that when she compared the nurses' timesheets with Caregivers' billing information, she discovered that on "[m]ost days, there were billings by CareGivers for 24 hours" for Ms. Cooper, but the nurses' timesheets documented only "12 hours, maybe a little bit more." (Tr. Vol. II at 268.) Shepherd noted that Caregivers never provided Ms. Cooper with "a nurse on Saturday," but Caregivers "billed every single Saturday." (Tr. Vol. II at 269.) Shepherd learned that the timesheets from June to November 2015 bearing Kornegay's name were for "services provided by Carla Edmonds" who was "not a licensed nurse." (Tr. Vol. II at 279.)

{¶ 9} Shepherd spoke with appellant during her investigation. Appellant told Shepherd that "she did the billing" at Caregivers and stated that if there were any billing errors they were unintentional. (Tr. Vol. II at 269.) Appellant admitted to Shepherd she "was aware that Ms. Edmonds' license was suspended" and that Caregivers "did not" provide Ms. Cooper with 24-hour a day nursing care. (Tr. Vol. II at 269-70.) Shepherd determined that from June 2 to November 20, 2015, Caregivers received $63,179.65 from ODM for nursing services which were either never provided to Ms. Cooper or were provided by an unlicensed nurse.

{¶ 10} The jury returned verdicts finding appellant guilty of fifth-degree felony theft and fourth-degree felony Medicaid fraud. At the April 18, 2019 sentencing hearing, the trial court determined the convictions merged for purposes of sentencing. The court sentenced appellant to a six-month prison term on the fourth-degree felony Medicaid fraud count and ordered appellant to pay restitution to ODM. The court issued its final judgment entry imposing sentence on April 21, 2019.

{¶ 11} Appellant appeals, assigning the following eight assignments of error for our review:

> [I.] The trial court erred in refusing to dismiss Juror [J.R.] for cause after he asked to be excused because of his trouble dealing with the charges against the Defendant. Juror [J.R.] expressed concerns over his ability to remain unbiased due to his recent interactions with home caregivers during his wife's illness and death.
>
> [II.] The trial court erred by allowing the jury to consider prejudicially irrelevant evidence.
>
> [III.] The trial court erred by not allowing a defense witness to testify.
>
> [IV.] The trial court erred by allowing the State Prosecutors to submit an incorrect spreadsheet into evidence.
>
> [V.] The state erred by including technical errors in the indictment.
>
> [VI.] Ineffective assistance of counsel.
>
> [VII.] The trial court erred by sentencing the appellant to prison time.
>
> [VIII.] The trial court erred by interfering with the defense examination strategy.

{¶ 12} Appellant's first assignment of error asserts the trial court erred by refusing to dismiss Juror J.R. after the juror asked to be excused from the jury. Appellant contends the trial court's failure to remove Juror J.R. deprived her of a fair trial.

{¶ 13} During voir dire, Juror J.R. informed the prosecutor that prior to his wife's death "four years ago," the juror had "Riverside Hospital, their hospice, Kobacker House, in our home for 16 months, going through that process." (Voir Dire Tr. at 137.) The prosecutor asked Juror J.R. if he could be fair and impartial in a case involving in-home nursing services, and the juror responded "[a]bsolutely." (Voir Dire Tr. at 138.) Neither the state nor defense sought to challenge Juror J.R. for cause or use a peremptory strike against him.

{¶ 14} Although appellant claims Juror J.R. "asked to be removed from the jury" as he could not "consider the evidence without bias," there is nothing in the record indicating that Juror J.R. asked to be removed from the jury for any reason. (Appellant's Brief at 5.) Appellant states that defense counsel "did not object to th[e] incident [regarding Juror J.R.] and agreed not to have this issue recorded on record." (Appellant's Brief at 6.) "[A]n appellate court is bound to the record before it and may not consider facts extraneous to that record." *Fitzgerald v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 03AP-1197, 2004-Ohio-3725, ¶ 11, citing *Paulin v. Midland Mut. Life Ins. Co.*, 37 Ohio St.2d 109, 112 (1974). *Accord State v. Cook*, 10th Dist. No. 05AP-515, 2006-Ohio-3443, ¶ 35 (holding that "[a]n appellate court is prohibited from determining questions on appeal that rest on matters that are outside the record"). Accordingly, we cannot consider appellant's allegations regarding Juror J.R. which rest on facts or events not contained in the record.

{¶ 15} The decision to disqualify a juror for bias is a discretionary function of the court, and such determination will not be reversed on appeal absent an abuse of discretion. *State v. Orlandi*, 10th Dist. No. 05AP-917, 2006-Ohio-6039, ¶ 8, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 168 (1990); *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 106. *See* Crim.R. 24(C)(9). As there is nothing in the record indicating that appellant objected to Juror J.R.'s presence on the jury, however, we review only for plain error. *Butler v. Stevens*, 2d Dist. No. 22822, 2009-Ohio-2775, ¶ 62. To demonstrate plain error, the defendant must show: (1) an error that is plain on the record, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings, and (2) that such error affected substantial rights, i.e., there was a reasonable probability that the error affected the outcome of the trial. *State v. J.M.*, 10th Dist. No. 14AP-621, 2015-Ohio-5574, ¶ 27, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

{¶ 16} "A jurors belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court." *State v. Phillips*, 74 Ohio St.3d 72, 89 (1995), citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982). *Accord State v. Jones*, 91 Ohio St.3d 335, 338 (2000). As the record demonstrates Juror J.R. affirmed he could be fair and impartial, we find no error, let alone plain error, in the trial court's retention of Juror J.R. on the jury.

{¶ 17} Appellant's first assignment of error is overruled.

{¶ 18} Appellant's second assignment of error asserts the trial court erred by admitting prejudicial and irrelevant evidence. Appellant specifically asserts the court erred by admitting state's exhibits 14 and 19. "A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party." *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 73; *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 19} State's exhibit 14 was a Chase Bank withdrawal slip demonstrating appellant withdrew $45,000 cash from Caregivers' checking account on October 1, 2015. Appellant was a signatory on Caregivers' checking account. Before the state sought to introduce state's exhibit 14, defense counsel argued that the withdrawal slip was irrelevant. The trial court indicated it would "probably allow it," but wanted to "wait and see how the defense handles things on your examination of [appellant], if she testifies." (Tr. Vol. II at 289.) The court told the state not to address the withdrawal slip with Shepherd.

{¶ 20} During her direct examination, Shepherd explained that Caregivers received a remittance from United totaling $45,505 on October 1, 2015. Shepherd stated "[p]retty much all" of the $45,505.00 remittance derived from billings related to Ms. Cooper, as only "[a] little over $700" of the $45,505.00 constituted payment for clients other than Ms. Cooper. (Tr. Vol. III at 18.) Shepherd explained that the $45,505.00 remittance was large for Caregivers, noting that Caregivers' total monthly deposits for May 2015 were $27,527.80. On cross-examination, Shepherd affirmed that the payments from United went to Caregivers as a company and not to appellant individually. Following an inquiry from the state, the court affirmed that the state could address the withdrawal slip with Shepherd during her redirect examination. On redirect, Shepherd identified state's exhibit 14 and affirmed that appellant personally received money during the relevant time frame as "[t]here was a withdrawal." (Tr. Vol. III at 69.)

{¶ 21} Appellant asserts that state's exhibit 14 was irrelevant and highly prejudicial, as the state failed to establish a link between the $45,000 withdrawal amount and the

amount appellant allegedly defrauded from ODM. Appellant notes that Caregivers' bank account contained reimbursements for clients other than Ms. Cooper.

{¶ 22} Evid.R. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible unless prohibited by evidentiary rule, statute, or constitutional provision. Evid.R. 402. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 23} Generally, "all relevant evidence is prejudicial." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 23. As such, "the rules of evidence do not attempt to bar all prejudicial evidence," but exclude only "evidence that is *unfairly* prejudicial." (Emphasis sic.) *Id.* "If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Evid.R. 403. Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." *State v. J.L.S.*, 10th Dist. No. 08AP-33, 2012-Ohio-181, ¶ 39, citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001). Evidence that "arouses emotions, evokes a sense of horror, or appeals to an instinct to punish may be unfairly prejudicial." *Id.* at ¶ 39, citing *State v. Cooper*, 147 Ohio App.3d 116, 2002-Ohio-617, ¶ 57 (12th Dist.)

{¶ 24} To establish theft in violation of R.C. 2913.02(A)(3), the state had to prove that appellant, "with purpose to deprive the owner of property or services," knowingly obtained or exerted control "over either the property or services * * * [b]y deception." R.C. 2913.02(A)(3). To establish Medicaid fraud in violation of R.C. 2913.40(B), the state had to prove that appellant knowingly made or caused to be made "a false or misleading statement or representation for use in obtaining reimbursement from the medicaid program." R.C. 2913.40(B). The $45,000 cash withdrawal slip tended to demonstrate that appellant intentionally sought to deprive ODM of monies for her personal benefit. Similarly, the withdrawal slip tended to demonstrate that appellant knowingly, rather than mistakenly, submitted fraudulent billings to United in order to obtain funds from the Medicaid program for her personal use. *Compare State v. Frazier*, 10th Dist. No. 10AP-112, 2010-Ohio-4440, ¶ 29. Accordingly, state's exhibit 14 was relevant.

{¶ 25} The probative value of the cash withdraw slip was not substantially outweighed by a danger of unfair prejudice. The cash withdrawal slip does not evoke a sense of horror, arouse emotions, or appeal to an instinct to punish. The fact that Caregivers' bank account contained deposits for clients other than Ms. Cooper concerned the weight of state's exhibit 14, rather than its admissibility. "[T]he weight to be given to the evidence, and the credibility of the witnesses are issues primarily for the trier of fact." *State v. Hairston*, 10th Dist. No. 05AP-366, 2006-Ohio-1644, ¶ 20, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967). The trial court did not abuse its discretion by admitting state's exhibit 14.

{¶ 26} State's exhibit 19 was Chinella's calendar from 2015 containing her "documentation" of the shifts worked by the medical caregivers. (Tr. Vol. II at 115.) Chinella explained that "[w]hen the nurses would come on a daily basis, [she] would put down the time that they came and the time – the beginning time and the ending time" of the nurses' shifts on the calendar. (Tr. Vol. II at 114.) Chinella stated she kept the calendar "for [her] record if [she] had to ever refer back to them. And [she] had kept calendars prior to this year because [she] was paying the nurses out of pocket, so [she] needed to keep the hours that they were there so [she] could make sure that [she] paid them correctly." (Tr. Vol. II at 118.) Ms. Cooper became bedridden following a seizure in 2013, but did not receive Medicaid financial assistance for her care until 2015.

{¶ 27} Defense counsel argued the state failed to lay a "proper foundation under [Evid.R.] 803(6)" for state's exhibit 19, as Chinella's "care of her mother" did not amount to a business activity. (Tr. Vol. II at 126.) The court found the calendar admissible pursuant to Evid.R. 803(6).

{¶ 28} Evid.R. 803(6) provides that the following documents are not excluded by the rule against hearsay:

> **Records of regularly conducted activity.**
>
> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or

circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 29} The Evid.R. 803(6) exception " 'is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy.' " *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, ¶ 11 (10th Dist.), quoting *Weis v. Weis*, 147 Ohio St. 416, 425-26 (1947). Although commonly referred to as the "business-records exception," Evid.R. 803(6) includes documents kept in the course of a regularly conducted "calling of every kind." *Id.*; Evid.R. 803(6).

{¶ 30} In *State v. Breckenridge*, 10th Dist. No. 05AP-868, 2006-Ohio-5038, this court concluded a father's responsibility for ensuring that his "bedridden and severely impaired son" received the "care necessary to keep him alive" would constitute a "calling" for purposes of Evid.R. 803(6). *Id.* at ¶ 36. The defendant in *Breckenridge* provided the son with in-home nursing care, and the father "accurately recorded [the defendant's] arrival and departure times for each visit * * * by means of notations in a personal calendar." *Id.* at ¶ 18. The *Breckenridge* court observed that the father's "diligent notation of the comings and goings of medical caregivers [in the calendar] were prepared by methods and circumstances indicating general trustworthiness." *Id.* at ¶ 36.

{¶ 31} Chinella's obligation to ensure her mother received the care she needed to survive constituted a calling for purposes of Evid.R. 803(6). Chinella indicated it was her regular practice to document the arrival and departure times of the nurses on the calendar, as she had used calendars to document the nurses' shifts since 2013. Chinella's systematic and methodical recording of the nurses' arrival and departure times demonstrated that Chinella's notations on the calendar were prepared under methods and circumstances indicating general trustworthiness.

{¶ 32} Appellant contends that there was no authentication of state's exhibit 19. Authentication or identification is a condition precedent to admissibility of evidence. *State v. Ollison*, 10th Dist. No. 16AP-95, 2016-Ohio-8269, ¶ 47. Authentication "is satisfied by

evidence sufficient to support a finding that the matter in question is what its proponent claims," and authentication may be accomplished by testimony from a witness with knowledge "that a matter is what it is claimed to be." Evid.R. 901(A) and (B)(1). *See State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 84 (noting that "[a]s one of the parties to the emails, Reedy was a witness with knowledge as required by Evid.R. 901, and his testimony was sufficient to authenticate the emails"). Chinella testified that state's exhibit 19 was the calendar she used in 2015 to record the arrival and departure times of the nurses. Chinella confirmed that the notations on the calendar were in "[her] handwriting." (Tr. Vol. II at 115.) Accordingly, Chinella's testimony was sufficient to authenticate state's exhibit 19.

{¶ 33} Appellant asserts the trial court erred by admitting state's exhibit 19 because Chinella produced the calendar in an untimely manner. Chinella explained at trial that, although she could not find the calendar contained in state's exhibit 19 when she first spoke with Shepherd in June 2016, she eventually found the calendar. The evidence demonstrating that Chinella misplaced the calendar for a period of time in 2016 affects the weight, rather than the admissibility, of state's exhibit 19. *Compare State v. Evans*, 10th Dist. No. 01AP-1112, 2002-Ohio-3322, ¶ 87 (stating that "[b]reaks in the chain of custody do not affect the admissibility of evidence but, rather, the weight to be afforded such evidence"). The trial court did not abuse its discretion by finding state's exhibit 19 admissible pursuant to Evid.R. 803(6).

{¶ 34} Based on the foregoing, appellant's second assignment of error is overruled.

{¶ 35} Appellant's third assignment of error asserts the trial court erred by excluding the testimony of defense witness Denise Hill. At trial, the state objected to Hill's testimony on the basis of relevancy. The prosecutor explained that Hill, who worked for the Area Agency on Aging, would testify that the "last time she had anything documented from CareGivers regarding any questions about United billing" was on "July 21st of 2014 in which CareGivers said they didn't know that United was taking over." (Tr. Vol. II at 290.) Defense counsel argued that Hill's testimony was relevant, as it demonstrated appellant's confusion concerning the Medicaid billing process. The court stated that Hill's testimony regarding a July 2014 conversation with Caregivers was "too far out of the zone," as appellant had an obligation "to conform to the billing practices and the rules and

regulations in 2015, and that's all we're talking about as far as her charges." (Tr. Vol. II at 291.) The court found Hill's testimony inadmissible pursuant to Evid.R. 403. Defense counsel proffered an interview summary containing the substance of Hill's proposed testimony for the record.

{¶ 36} Appellant contends that the trial court violated her constitutional right to call witnesses by excluding Hill's testimony. The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide a criminal defendant with the right to compulsory process to procure the attendance of witnesses in their favor. The right of a criminal defendant to present witnesses on his or her own behalf in order to establish a defense is a fundamental element of due process of law. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compulsory process, however, is not unlimited." *State v. Denis*, 117 Ohio App.3d 442, 446 (6th Dist.1997). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor* at 410. *Accord Denis* at 446 (holding that "a defendant's right to present his own witnesses to establish a defense is prescribed by the rules of evidence").

{¶ 37} As the indictment alleged that appellant committed theft and Medicaid fraud from June 2 through November 20, 2015, the relevance of Hill's testimony concerning a July 2014 conversation with Caregivers was negligible. Accordingly, the trial court did not abuse its discretion by finding the probative value of Hill's testimony substantially outweighed by the danger of confusion of the issues relevant to the case pursuant to Evid.R. 403(A).

{¶ 38} Appellant's third assignment of error is overruled.

{¶ 39} Appellant's fourth assignment of error asserts the trial court erred by allowing the state to submit an incorrect spreadsheet into evidence. Shepherd explained at trial that she summarized the voluminous records contained in state's exhibits 9, 6, 3, and 13 into the spreadsheet contained in state's exhibit 21. State's exhibit 9 contained remittance advices from United depicting the payments Caregivers received on claims submitted for services allegedly rendered to Ms. Cooper. State's exhibit 3 contained Brewer's timesheets from June to October 2015, and state's exhibit 6 contained Edmonds'

timesheets (in Kornegay's name) from June to November 2015. State's exhibit 13 contained Caregivers' bank account records.

{¶ 40} Defense counsel objected to state's exhibit 21, arguing that the state failed to satisfy the foundation requirements of Evid.R. 1006. However, defense counsel affirmed that he had all the predicate documents Shepherd used to create the spreadsheet. The court overruled the objection, noting the spreadsheet was a "rational approach to a document-intensive case." (Tr. Vol. II at 293.)

{¶ 41} Evid.R. 1006 provides the "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." For an Evid.R. 1006 summary to be admissible, "the documents on which it was based must be admitted or offered into evidence or their absence explained." *Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC*, 1st Dist. No. C-130127, 2014-Ohio-2799, ¶ 59, citing *Eysoldt v. Imaging*, 194 Ohi0 App.3d 630, 2011-Ohio-2359, ¶ 34 (1st Dist.) *Accord State v. Barron*, 10th Dist. No. 99AP-59 (June 8, 2000). *See State v. Edwards*, 3d Dist. No. 9-03-63, 2004-Ohio-4015, ¶ 25 (noting that when the "underlying documents used in comprising the summary" are admitted into evidence, the jury has the "ability to independently ascertain the accuracy of the information contained" in the summary). State's exhibits 9, 6, 3, and 13 were each admitted into evidence. Accordingly, the trial court did not abuse its discretion by admitting state's exhibit 21 pursuant to Evid.R. 1006.

{¶ 42} Appellant asserts that state's exhibit 21 "was incorrect and therefore inadmissible" because the spreadsheet did not contain amounts from reconsidered claims. (Appellant's brief at 15.) The accuracy of the information contained in state's exhibit 21 concerns the weight to be given the exhibit, rather than its admissibility. *See B.T. Lazarus & Co. v. Alma Marketing, Inc.*, 10th Dist. No. 89AP-1350 (June 13, 1991) (stating that the "issue as to the accuracy of the figures" contained in an Evid.R. 1006 summary "bears upon the weight to be given the exhibits rather than upon their admissibility"). Appellant claims that she submitted a list of reconsidered claims regarding Ms. Cooper to her defense counsel and asserts that these reconsidered claims "would have reduced the overall total" allegedly defrauded from ODM. (Appellant's Brief at 14-15.) However, there is no evidence in the record regarding appellant's alleged list of reconsidered claims. Shepherd stated she

looked for evidence of reconsidered or resubmitted claims during her investigation, but "didn't see any resubmitted claims." (Tr. Vol. III at 45.)

{¶ 43} Based on the foregoing, appellant's fourth assignment of error is overruled.

{¶ 44} Appellant's fifth assignment of error asserts the state erred by including technical errors in the indictment. Appellant contends that the indictment contained an incorrect value of the alleged theft and mistakenly referred to her as the owner of Caregivers.

{¶ 45} "The sufficiency of an indictment is subject to the requirements of Crim.R. 7 and the constitutional protections of the Ohio and federal Constitutions." *State v. Childs*, 88 Ohio St.3d 558, 564 (2000). Crim.R. 7(B) provides that an indictment "may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, * * * or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." An indictment meets constitutional requirements if it: (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which they must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id.* at 565, citing *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

{¶ 46} Count 1 of the indictment charged appellant with grand theft, alleging that "Carla Clark did with purpose to deprive the owner, The Ohio Medicaid Program, of property or services, to wit: monies, knowingly obtain or exert control over either the property or services by deception." (Emphasis sic.)  Count 2 charged appellant with Medicaid fraud, alleging that "Carla Clark did knowingly make or cause to be made a false or misleading statement or representation for use in obtaining reimbursement from the medicaid program." (Emphasis sic.) The value of the property alleged to be at issue in both charges was more than $7,500 and less than $150,000.

{¶ 47} The indictment complied with Crim.R. 7(B) and constitutional requirements. The charges were in the words of the applicable statutes, R.C. 2913.02(A)(3) and 2913.40(B); provided appellant with notice of the elements of the offenses; and enabled appellant to plead an acquittal or conviction in bar of future prosecutions for the same offenses. The indictment did not refer to appellant as the owner of Caregivers, but rather

referred to appellant by name. The indictment also provided appellant notice of the value of the property involved. *See State v. Smith*, 121 Ohio St.3d 509, 2009-Ohio-787, ¶ 13-14 (holding that, although "the value of stolen property is not an essential element of the offense of theft but, rather, is a finding that enhances the penalty of the offense," due process requires an indictment for theft to "contain notice of the value of the property involved or the degree of the offense alleged"). Appellant fails to support her contention that the indictment included technical errors.

{¶ 48} Appellant asserts that the state presented incorrect information to the grand jury to secure the indictment. However, as the indictment is valid, it " 'is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.' " *State v. Davis*, 38 Ohio St.3d 361, 365 (1988), quoting *U.S. v. Calandra*, 414 U.S. 338, 345 (1974). Moreover, there is no evidence in the record regarding the grand jury proceedings and, thus, nothing to support appellant's contention that the state presented incorrect information to the grand jury. *See State v. Armstrong*, 8th Dist. No. 103088, 2016-Ohio-2627, ¶ 42. "Grand jury proceedings are secret" and an accused is generally "not entitled to inspect grand jury transcripts." *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph two of the syllabus.

{¶ 49} Based on the foregoing, appellant's fifth assignment of error is overruled.

{¶ 50} Appellant's sixth assignment of error asserts trial counsel provided constitutionally ineffective assistance by revealing critical information to the prosecution prior to trial, failing to send a subpoena until the week prior to trial, and failing to effectively cross-examine Brewer.

{¶ 51} A defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The failure to make either showing defeats a claim of ineffective assistance of counsel. *Bradley* at 143, citing *Strickland* at 697.

{¶ 52} "Judicial scrutiny of counsel's performance must be highly deferential * * * [and a] court must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. "Decisions on trial strategy and tactics are generally afforded a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 86. " 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *Bradley* at paragraph three of syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 82, citing *Strickland* at 694.

{¶ 53} Appellant asserts defense counsel informed the prosecutors prior to trial that the spreadsheet in state's exhibit 21 was incorrect and needed to be modified. However, this alleged pre-trial conversation between defense counsel and the prosecutors is not contained in the record. When proof outside the record is " 'necessary to support an ineffective assistance claim * * * it is not appropriate for consideration on direct appeal.' " *State v. Phipps*, 10th Dist. No. 13AP-640, 2014-Ohio-2905, ¶ 69, quoting *State v. Zupancic*, 9th Dist. No. 12CA0065, 2013-Ohio-3072, ¶ 4. *See State v. Kennard*, 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 24, citing *State v. Hillman*, 10th Dist. No. 14AP-252, 2014-Ohio-5760, ¶ 57 (stating that "[w]hen allegations of ineffective assistance of counsel hinge on facts outside the record, the proper remedy is a petition for postconviction relief rather than a direct appeal"). Accordingly, appellant's contention that defense counsel rendered ineffective assistance by revealing information to the state prior to trial is not an appropriate consideration for direct appeal.

{¶ 54} Appellant further asserts that defense counsel sent a subpoena to United "the week prior to trial thereby ineffectively allowing for enough time to receive proof of reconsidered claims and submit this proof into evidence." (Appellant's Brief at 20-21.) There is nothing in the record indicating that United possessed evidence of reconsidered or resubmitted claims regarding Ms. Cooper. The evidence at trial demonstrated only that Shepherd did not find any evidence of resubmitted claims during her investigation. Accordingly, appellant would need proof from outside the record to establish that United possessed evidence of reconsidered claims which it could have produced in response to a

timely issued subpoena. As such, appellant's contention that defense counsel rendered ineffective assistance by sending a subpoena to United the week prior to trial is not an appropriate consideration for direct appeal.

{¶ 55} Appellant lastly asserts that defense counsel failed to effectively cross-examine Brewer. Appellant claims defense counsel failed to ask Brewer if Edmonds had informed Brewer that she missed work because she was in Columbus, Ohio trying to reinstate her nursing license. On cross-examination, defense counsel asked Brewer if Edmonds "had actually told you that she was going to Columbus to try to address her problems with the nursing licenses, didn't she?" (Tr. Vol. II at 162.) The state objected to the question and the court sustained the objection. *See State v. Kean*, 10th Dist. No. 17AP-427, 2019-Ohio-1171, ¶ 89 (noting that the "fact that trial counsel was unsuccessful in eliciting inadmissible hearsay testimony does not render counsel's performance deficient, nor has appellant demonstrated prejudice from the alleged deficiency"). "The scope of cross-examination clearly falls within trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 66, citing *State v. Campbell*, 90 Ohio St.3d 320, 339 (2000). Appellant fails to establish that defense counsel's cross-examination of Brewer amounted to ineffective assistance of counsel.

{¶ 56} Based on the foregoing, appellant's sixth assignment of error is overruled.

{¶ 57} Appellant's seventh assignment of error asserts the trial court erred by sentencing appellant to a six-month term of imprisonment. Appellant contends that the trial court disregarded the sentencing guidelines set forth in R.C. 2929.13(B)(1) by sentencing her to prison on a non-violent fourth-degree felony. *See* R.C. 2929.13(B)(1)(a) and (b)(vii) (generally providing a presumption against prison time and in favor of community control for fourth and fifth degree non-violent felonies which meet certain criteria, but providing a sentencing court with discretion to impose a prison term if the offense related to a "position of trust" held by the offender); *State v. Betts*, 10th Dist. No. 19AP-226, 2020-Ohio-4891, ¶ 9-16 (concluding that, because the defendant's fourth-degree felony Medicaid fraud conviction resulted from a "position of trust" which permitted the defendant to "directly bill the Ohio Department of Medicaid for her services," the trial court did not err by sentencing the defendant to a prison term pursuant to R.C.

2929.13(B)(1)(b)(vii)). The state asserts that appellant's seventh assignment of error is moot, as appellant has served her prison sentence.

{¶ 58} Generally, "[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus. However, because a "person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment" an appeal "challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal." *State v. Golston*, 71 Ohio St.3d 224 (1994), syllabus.

{¶ 59} The rationale underlying *Golston*, however, "does not apply if an appeal solely challenges the length of a sentence rather than the underlying conviction." *State v. Montavon*, 10th Dist. No. 12AP-631, 2013-Ohio-2009, ¶ 6, citing *Columbus v. Duff*, 10th Dist. No. 04AP-901, 2005-Ohio-2299, ¶ 12. Indeed, "if an appellant has already served his sentence and is only questioning the propriety of the sentence, no remedy would have any effect without a reversal of the underlying conviction." *State v. Wooden*, 10th Dist. No. 13AP-159, 2013-Ohio-3600, ¶ 8. Thus, "a defendant's appeal of a sentence already served is moot," as a sentence "completed cannot be lessened or negated in any meaningful way." *State v. Marcum*, 10th Dist. No. 15AP-421, 2015-Ohio-5237, ¶ 7.

{¶ 60} Appellant's seventh assignment of error asserts only that the trial court erred in sentencing her to a term of imprisonment. At this time, however, appellant has served the entirety of her six-month prison sentence imposed in April 2019.

{¶ 61} Accordingly, appellant's seventh assignment of error is rendered moot.

{¶ 62} Appellant's eighth assignment of error asserts the trial court erred by interfering with the defense's examination strategy. Appellant alleges the trial judge elicited unfavorable testimony against appellant and displayed biased behavior by questioning witnesses during trial.

{¶ 63} Evid.R. 614(B) provides that the court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." As "[a] trial court has an obligation to control the proceedings before it, to clarify ambiguities, and to take steps to ensure

substantial justice," a trial court "should not hesitate to pose pertinent and even-handed questions to witnesses." *Brothers v. Morrone-O'Keefe Dev. Co., LLC*, 10th Dist. No. 05AP-161, 2006-Ohio-1160, ¶ 11. " 'In the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.' " *State v. Batson*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98 (2d Dist.1982). "A trial court's questioning of a witness is not impartial merely because it elicits evidence that is damaging to one of the parties." *Brothers* at ¶ 12, citing *Klasa v. Rogers*, 8th Dist. No. 83374, 2004-Ohio-4490, ¶ 32.

{¶ 64} As Evid.R. 614(B) "imbues trial courts with the discretion to decide whether or not to question a witness, appellate courts must review any questioning by a trial court under the abuse of discretion standard." *Brothers* at ¶ 10, citing *State v. Johnson*, 10th Dist. No. 03AP-1103, 2004-Ohio-4842, ¶ 10. However, when trial counsel fails to object to the court's comments at trial, an appellate court reviews the trial court's comments only for plain error. *State v. Jackson*, 10th Dist. No. 02AP-867, 2003-Ohio-6183, ¶ 25.

{¶ 65} The trial court's questions in the present case were phrased in a professional manner and properly sought to clarify ambiguities in the witnesses' testimonies. For instance, the court asked questions seeking to clarify if United or ODM determined the amount of payment on a claim, the timeline of Edmonds' disciplinary proceedings before the Ohio Board of Nursing, whether Kornegay was still working at Caregivers when Edmonds signed Kornegay's name to the nursing notes, and when Shepherd began her investigation. Defense counsel did not object to any of the court's questions.[1] The court's questions to the witnesses fail to present any indication of judicial bias.

{¶ 66} Furthermore, the trial court instructed the jury to not let "anything the court said or did, other than rulings on the law and on what evidence was proper, have any impact upon your deliberations," and to "attach no special significance to answers that witnesses gave to questions asked by the court." (Tr. Vol. III at 159.) We presume the jury followed the court's instructions. *State v. Raglin*, 83 Ohio St.3d 253, 264 (1998), citing *State v. Goff*,

---

[1] Additional questions from the court can be found on the following pages of the transcript: Tr. Vol. II at 54, 68, 90, 93, 124, 149-50, 154-55, 158, 172, 192, 197-98, 256, 275; Vol. III at 56, 76-77, 84.

82 Ohio St.3d 123, 135 (1998). *See State v. Davis*, 79 Ohio App.3d 450, 456 (4th Dist.1992) (noting that, even "[a]ssuming some minimal prejudice from some of the trial court's comments and questions," the court's "instruction admonishing the jury to disregard any of its comments * * * sufficiently cured any error").

{¶ 67} Appellant fails to demonstrate that the court's questions amounted to plain error or interfered with defense's examination strategy.

{¶ 68} Appellant's eighth assignment of error is overruled.

{¶ 69} Having overruled appellant's first, second, third, fourth, fifth, sixth, and eighth assignments of error, and finding appellant's seventh assignment of error moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and KLATT, J., concur.

_____