[Cite as *State v. Six*, 2023-Ohio-4361.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,                                          CASE NO. 9-23-14

    PLAINTIFF-APPELLEE,

    v.

DEBRA SIX,                                              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Municipal Court
Trial Court No. CRB2101916B

Judgment Affirmed

Date of Decision:  December 4, 2023

APPEARANCES:

    *Kyle Phillips* **for Appellant**

    *Mark Russell* **for Appellee**

**MILLER, P.J.**

{¶1} Defendant-appellant, Debra Six ("Six"), appeals the conviction entered against her by the Marion Municipal Court following a jury's guilty verdict on one count of vehicular manslaughter. For the reasons that follow, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

{¶2} On September 6, 2020, at around 3:00 p.m., Six was driving westbound on East Farming Street in Marion, Ohio and stopped at a stop sign at the intersection with North State Street. Joshua Richards ("Richards") was traveling northbound on North State Street while riding a motorcycle. Vehicles traveling northbound on North State Street, like Richards' motorcycle, have no traffic control device at the intersection with East Farming Street. Six moved into the intersection and was struck by Richards' motorcycle. Richards later died as a result of the crash.

{¶3} On September 16, 2021, the State filed a criminal complaint against Six (the "Complaint"). The body of the document states, in full:

> CHARGE:     VEHICULAR     MANSLAUGHTER     –     ORC
> 2903.06(A)(4)
>
> Complainant, Sergeant Keith G. Smith, Ohio State Highway Patrol, being duly sworn states that Debra D. Six, within Marion County Ohio upon a public highway, on or about the 6th day of September 2020, did while operating or participating in the operation of a motor vehicle, cause the death of another, as the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor, in violation of Ohio Revised Code § 2903.06(A)(4), a misdemeanor of the 2nd degree.

The Complaint was signed by Sergeant Smith and a notary public.[1]  The State never amended the Complaint, and Six never challenged the sufficiency of the Complaint. On October 12, 2021, Six served Defendant's Request for Discovery, but did not request a bill of particulars.

{¶4} Following a two-day jury trial commencing on December 6, 2022, the jury found Six guilty of vehicular manslaughter in violation of R.C. 2903.06(A)(4). On February 6, 2023, the trial court held a sentencing hearing and sentenced Six to 90 days in jail and a $750 fine, with 30 days of jail time and $500 of the fine suspended on the condition that Six obey the law for five years.  Additionally, the trial court suspended her license for five years, required her to perform 80 hours of community service, and required her to pay court costs and $612.10 in restitution. The next day, the trial court filed its journal entry.  This appeal followed.

## II.     ASSIGNMENTS OF ERROR

{¶5} Six raises three assignments of error for our review:

### First Assignment of Error

**Appellant's conviction was not supported by the manifest weight of the evidence.**

### Second Assignment of Error

**The trial court erred to the substantial prejudice of Defendant-Appellant Debra Six and deprived Appellant of a fair trial when the court conducted its own examination of Appellant's expert, Robert**

---

[1] On the same day, Sergeant Smith filed another, separate criminal complaint against Six that charged her with vehicular homicide under R.C. 2903.06(A)(3)(a).  The vehicular homicide charge was dismissed and is not at issue in this appeal.  (Feb. 13, 2023 Journal Entry).

**Burch, in the presence of the jury and permitted Appellee's [sic] to conduct a voir dire examination of Mr. Burch, in the presence of the jury.**

**Third Assignment of Error**

**The trial court erred to the substantial prejudice of Defendant-Appellant Debra Six and deprived Appellant of a fair trial in permitting multiple Criminal Rule 16 discovery violations to occur which denied and kept material evidence from Defendant-Appellant.**

## III. DISCUSSION

### A. First Assignment of Error

{¶6} In her first assignment of error, Six contends her conviction was not supported by the manifest weight of the evidence. She makes two main arguments. First, she argues she presented substantial evidence that Richards' motorcycle was traveling at an unlawful speed and, therefore, Richards had forfeited the right-of-way at the time of the crash. Second, she argues the State failed to charge and convict her with a predicate offense under Title XLV of the Revised Code, as required by R.C. 2903.06(A)(4).

#### i. Standard of review for manifest weight of the evidence

{¶7} The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving

conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119; *see also Thompkins* at 387.

### ii. Applicable law

{¶8} The vehicular manslaughter statute states, in relevant part: "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor * * *." R.C. 2903.06(A)(4). Thus, commission of "a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor" is a predicate offense, and that predicate offense is an element of vehicular manslaughter. *In re Neill*, 3d Dist. Logan Nos. 8-04-08 and 8-04-09, 160 Ohio App.3d 439, 2005-Ohio-1696, ¶ 6 ("in order to find [defendant] guilty of vehicular manslaughter, the trial court was first required to find [defendant] guilty of a minor misdemeanor, which in this case is the failure-to-yield charge"); *State v. McHenry*, 1st Dist. Hamilton No. C-170671, 2018-Ohio-3383, ¶ 12 (the predicate

offense, violating R.C. 4511.202 by failing to operate the vehicle with reasonable control, "was a basic element of the offense of vehicular manslaughter under R.C. 2903.06(A)(4)").

{¶9} Regarding a failure-to-yield offense, "a driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him." *In re Neill* at ¶ 10. "Conversely, the driver with the right of way forfeits this preferential status over other drivers if he or she fails to proceed in a lawful manner." *Id.* In this context, "right of way" means the right of a vehicle "to proceed uninterruptedly in a lawful manner in the direction in which it" is moving, in preference to another vehicle approaching its path from a different direction. R.C. 4511.01(UU). Within Title XLV of the Revised Code, R.C. 4511.43(A) "provides, in part, that after stopping at a stop sign, drivers must yield to the right of way of any vehicle that constitutes an immediate hazard." *State v. Huffman*, 9th Dist. Wayne No. 14AP0052, 2016-Ohio-8093, ¶ 14. Generally, violating R.C. 4511.43(A) is a minor misdemeanor. *See* R.C. 4511.43(C).

{¶10} A defendant who asserts that an opposing driver's right of way has been forfeited is required to present evidence rebutting the presumption of lawful operation. *In re Neill*, 2005-Ohio-1696, at ¶ 10. A driver proceeds in a lawful manner by complying with Ohio traffic laws. *Id.* Additionally, "evidence of speed in excess of a posted speed limit *alone* is *not conclusive* that a vehicle is proceeding unlawfully and has forfeited its right of way." (Emphasis sic.) *Id.* at ¶ 13. When a

defendant has "initially rebutted the presumption that an opposing vehicle was proceeding lawfully because it was traveling in excess of a posted speed limit, the trial court must further determine whether the speed of the opposing vehicle was 'reasonable given the surrounding conditions.'" *Id.*, quoting *Fremont v. Tilson*, 6th Dist. Sandusky No. S-92-25, 1993 WL 306564, *3 (June 30, 1993).

### iii.    Analysis

**{¶11}** Evidence at the trial proved that, for vehicles traveling northbound on North State Street (like Richards' motorcycle), the speed limit changes from 25 miles per hour to 35 miles per hour approximately 130 feet south of the intersection with East Farming Street.  (Dec. 6, 2022 Tr. at 151-53; Dec. 7, 2022 Tr. at 381). Thus, the speed limit for a vehicle traveling northbound on North State Street is 35 miles an hour at the intersection where the crash occurred.  Additionally, the road conditions at the time of the crash were good: the roadway was dry, there was no fog, and it was not cold.

**{¶12}** There was conflicting evidence at trial regarding how fast Richards was driving his motorcycle.  The State's expert witness, Sergeant John Banta ("Sergeant Banta"), was a crash reconstruction supervisor with the Ohio State Highway Patrol deployed to respond to the crash.  Sergeant Banta opined that, based on his investigation, "[t]he speed at the start of the skid was, again, 29 to 32, and that was within a 35 mile-per-hour zone." (Dec. 6, 2022 Tr. at 153-54).  Sergeant Banta concluded that Six was the party at fault for the crash.  The State also called

Greg Meade, who lived two houses south from the intersection where the crash took place. At the time, Meade was sitting on his porch observing traffic. He testified that Richards' motorcycle drew his attention when it passed in front of his house because, although that portion of the street is "known as a raceway," Richards' "motorcycle was actually going quite slow." (Dec. 6, 2022 Tr. at 224, 227). He testified that, in his "opinion, it seemed like the motorcycle was going 15, 20, 25 tops, if even 25" miles per hour. (*Id.* at 224-25). He also testified that it would be a "lie" if someone said the motorcycle was going 50 miles an hour or more. (*Id.*)

{¶13} On the other hand, Six's expert witness (Robert Burch, who had experience in accident investigations and reconstruction) opined that, based on his investigation, Richards' motorcycle was traveling at least 59 miles per hour at the time of the collision. (Dec. 7, 2022 Tr. at 367). Burch concluded Six had acted properly when she entered the intersection after stopping at the stop sign and that Richards' failure to drive at a reasonable speed caused the crash. Six also called Jared Kaufman, who was on South State Street approximately three to four blocks from where the crash took place. Just prior to the collision, Kaufman observed Richards on his motorcycle and estimated it was traveling around 60 miles per hour at the place where Kaufman observed him. (*Id.* at 398). Kaufman heard a bang from the collision approximately 45 seconds after he had observed Richards pass him on his motorcycle.

**{¶14}** "When the jury hears testimony from competing experts with opposite opinions, such that the evidence was susceptible to more than one interpretation, as here, the jury's verdict is not against the manifest weight of the evidence." *State v. Garrett*, 171 Ohio St.3d 139, 2022-Ohio-4218, ¶ 139; *compare In re Neill*, 2005-Ohio-1696, at ¶ 11-13 (all testimony, from both parties, indicated the victim had been traveling at least five miles per hour above the posted speed limit, so the defendant initially rebutted the presumption that the victim's vehicle was proceeding lawfully). Each party provided conflicting expert opinions regarding whether the decedent or Six was the party at fault, and each party provided evidence through both expert testimony and eyewitness testimony regarding the speed of Richards' vehicle at the time of the incident. The jury was free to determine which expert was more credible, and we allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). We also note that the State's eyewitness' testimony came from someone who was only a couple of houses from where the crash occurred, while Six's eyewitness' testimony came from someone who was three or four blocks from where it occurred. The jury's verdict was not against the manifest weight of the evidence. *State v. Legg*, 5th Dist. Licking No. 04 CA 63, 2005-Ohio-2376, ¶ 16-19 (where defendant's expert opined the victim had been traveling above the posted speed limit at the time of impact, but both the victim and the investigating trooper opined the victim was traveling below

the posted speed limit, the defendant's traffic conviction for failure-to-yield was not against the manifest weight of the evidence or an error of law); *Huffman*, 2016-Ohio-8093, at ¶ 15-18 (jury's conviction for vehicular manslaughter, with a failure-to-yield predicate offense, was not against the manifest weight of the evidence).

### iv.     Analysis of the Complaint's sufficiency

**{¶15}** We now turn to Six's second argument within her first assignment of error.  Six claims the State failed to properly charge the predicate offense of failure-to-yield because the State failed to cite its statute number or otherwise reference the predicate offense of failure-to-yield in the charging document.  She indicates that she is challenging the sufficiency of the Complaint and also says the State never provided her with a bill of particulars listing the predicate offense.  Therefore, according to Six, the conviction is not supported by the manifest weight of the evidence and must be reversed.

**{¶16}** In Ohio, a complaint is the basic charging instrument in criminal proceedings.  *State v. Miles*, 3d Dist. Hancock No. 5-18-06, 2018-Ohio-3317, ¶ 11.  "'The purpose of a complaint filed in a criminal case is to provide reasonable notice to the defendant of the nature of the offense.'"  *State v. Hill*, 3d Dist. Henry No. 7-17-07, 2018-Ohio-1345, ¶ 15, quoting *State v. Smith*, 10th Dist. Franklin No. 16AP-21, 2017-Ohio-9283, ¶ 21.  The rules of criminal procedure provide:

> The complaint is a written statement of the essential facts constituting the offense charged.  It shall also state the numerical designation of

the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths.

Crim.R. 3(A). The rules also provide that the written statement "may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B); *see also State v. Grimes*, 3d Dist. Marion No. 9-01-22, 2001 WL 1626938, * 2 (Dec. 19, 2001), fn. 1 (text of Crim.R. 7(B) "has been broadened to apply to complaints as well" as to indictments or informations); *State v. Mays*, 104 Ohio App.3d 241, 245, 661 N.E.2d 791 (2d Dist.1995) ("[a]lthough Crim.R. 7(B) applies to indictments or informations, * * * it may by implication also be said to apply to complaints").

{¶17} Therefore, generally, a complaint must (1) contain a written statement of the essential facts constituting the offense charged, and that written statement may be in the words of the applicable section of the statute or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged; (2) state the numerical designation of the applicable statute or ordinance; and (3) be made upon oath before any person authorized by law to administer oaths. *Hill* at ¶ 15; *State v. Jones*, 11th Dist. Ashtabula No. 2015-A-0068, 2016-Ohio-6987, ¶ 18; Crim.R. 3(A); Crim.R. 7(B).

{¶18} Here, although the Complaint is "in the words of the applicable section of the statute" for vehicular manslaughter, it does not identify a predicate offense. Crim.R. 7(B). In other words, it does not identify which provision within Title XLV of the Revised Code is the one the State alleged Six violated and resulted in Richards' death.

{¶19} As stated above, generally, a complaint may be in the words of the applicable section of the statute *or* in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged. *Hill*, 2018-Ohio-1345, at ¶ 15; *State v. Ebraheim*, 6th Dist. Lucas No. L-14-1157, 2015-Ohio-4055, ¶ 25, 31 (despite not citing the statutory number of the predicate offense, the complaint properly charged appellant with vehicular manslaughter in violation of R.C. 2903.06(A)(4) where, regarding the predicate offense, "the complaint stated that appellant 'failed to yield the right of way' to [victim's] motorcycle"). However, merely reciting the words of the vehicular manslaughter statute, without identifying the specific predicate offense in any way, is insufficient.[2] *State v. Reinhart*, 3d Dist. Van Wert No. 15-06-07, 2007-Ohio-2284, ¶ 18 (the information did not charge the defendant with vehicular manslaughter because it failed to properly charge a predicate offense).

---

[2] The charging document need not give notice of the predicate offense's own elements. *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, syllabus ("[a]n indictment that tracks the language of the charged offense and identifies a predicate offense by reference to the statute number need not also include each element of the predicate offense in the indictment"). "[I]t is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense." *Id.* at ¶ 12.

**{¶20}** Not only does the Complaint here fail to cite the statute number or elements of the predicate offense, but its lack of naming or otherwise identifying the predicate offense results in it failing to provide "words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B). Therefore, the Complaint is lacking because it neither identifies the predicate offense (an element of vehicular manslaughter) by reference to its statute number nor contains words sufficient to give Six notice of the predicate offense. *See Hill*, 2018-Ohio-1345, at ¶ 15; *Ebraheim* at ¶ 27, 31; *Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, at ¶ 12. However, this does not end the analysis.

### v. Analysis of waiver and plain error regarding the Complaint's sufficiency

**{¶21}** Because this issue was never raised by Six in the trial court, she has waived all but plain error. *State v. Carter*, 89 Ohio St.3d 593, 598, 734 N.E.2d 345 (2000) (where an element of a charged offense was missing from the indictment and defendant argued he therefore did not have notice of the charges against him, but he never challenged the sufficiency of the indictment at any time before or during his trial, "such error [was] waived absent plain error"); *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 22, 27-28 (where defendant argued the criminal complaint was defective because it failed to allege all elements of the offense, "[b]ecause [defendant] failed to object to the complaint on

this basis before the trial court, he has waived all but plain error"), citing *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 46.

**{¶22}** The State argues in its brief that Six never requested a bill of particulars and "waived her right to raise the issue on appeal [regarding whether the Complaint properly charged the predicate offense of failure-to-yield] by failing to challenge the error in the trial court." (Appellee's Brief at 6). Six replies in her briefing that she did request a bill of particulars. However, Six is mistaken. Despite serving requests for discovery, Six did not also request a bill of particulars in that document. In fact, there is no evidence in the record that Six ever requested a bill of particulars.[3] Additionally, nothing shows Six ever moved to dismiss or otherwise challenged the sufficiency of the Complaint. Ultimately, there is no indication Six ever raised the issue of the Complaint's sufficiency with the trial court—whether before, during, or after the trial. Therefore, this error regarding the Complaint's sufficiency is waived absent plain error.

**{¶23}** Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious

---

[3] Tellingly, Six fails to identify any request for a bill of particulars in the record; instead, she infers she made a request for a bill of particulars by quoting a portion of the State's response to the Defendant's Request for Discovery, contending that "the Complaint filed in this case is sufficient for the Bill of Particulars." However, that portion of the State's response, regardless of why it was made, is obviously not a request for a bill of particulars and Six did not challenge that response in the trial court.

defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning that the error "must have affected the outcome of the trial." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36; *see also Carter* at 598 ("[p]lain error does not exist unless, but for the error, the outcome at trial would have been different"). Yet, even when an appellant establishes those three prongs, "[n]otice of plain error under CrimR. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *see also State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23 ("even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it").

**{¶24}** Even assuming, without deciding, the Complaint's insufficiency constituted error that was plain, Six has not established that the error affected the outcome of her trial. She does not show that the failure to charge a specific predicate offense in the Complaint impeded her ability to defend against the charge. For example, Six neither demonstrates nor argues that the Complaint's failure to identify the predicate offense resulted in her not obtaining relevant evidence during the discovery period.

**{¶25}** From our review of the record, it is evident the trial court and both parties understood the predicate offense committed by Six was her failure to yield. During opening statements, the State indicated Six failed to yield the right-of-way.

The trial transcript shows Six expected and was fully-prepared to address the State's assertion that the predicate offense was failure-to-yield. For example, in Six's opening statement, her counsel argued Six had properly stopped at the intersection, looked toward North State Street and saw no one, proceeded across the intersection, and was struck by a motorcycle traveling at a high rate of speed. Indeed, Six's counsel even stated in his opening statement: "I'm sure we'll talk about right-of-way throughout this case * * * [b]ut the right-of-way is forfeited if you are speeding," and "[i]t will be in your jury instructions" that "if you are traveling at a high rate of speed, the law tells you it's forfeited." (Dec. 6, 2022 Tr. at 73). Additionally, during cross-examination of the State's expert witness, Six's counsel attacked the State's evidence regarding the failure-to-yield offense. (*See, e.g., id.* at 184). Six's counsel argued during closing arguments that Six had presented the jury "a case where [Richards] hasn't proceeded lawfully" because "he was speeding." (Dec. 7, 2022 Tr. at 495-96). Also during closing arguments, Six's counsel referenced the jury instructions regarding right-of-way and losing the right-of-way by not proceeding lawfully. (*Id.*) Finally, the jury instructions themselves included sections regarding the predicate offense of failure-to-yield. (*Id.* at 504-07). This included the following:

> A driver that has failed to stop at a stop sign or failed to yield the right-of-way to any vehicle in the intersection after stopping at the stop sign has committed a minor misdemeanor violation. On the other hand, the law considers the other driver's operation of his vehicle. Although the other driver has an absolute right to proceed uninterruptedly upon

the highway, the other driver can forfeit the right-of-way if he unlawfully operates his vehicle at a speed more than the posted limit.

(*Id.* at 506-07).

**{¶26}** Thus, throughout the trial, Six argued the State could not and did not prove the predicate offense of failure-to-yield. This runs counter to Six's claim of plain error. *Carter*, 89 Ohio St.3d at 598 (no plain error where, despite defendant's argument he had no notice of the charges against him and was unable to defend himself, the record revealed defendant vigorously defended against the charge, including challenging the State's forensic experts on evidence that supported the charge); *State v. Cochran*, 2d Dist. Clark No. 94-CA-80, 1995 WL 766014, *5 (Dec. 29, 1995) (despite error in indictment by failing to identify an element of the offense, no plain error where the defendant's attorney prepared an adequate defense, which included his argument that the omitted element had not been committed; the appellate court could not "conclude that, but for the error, the outcome of the trial would have clearly been different").

**{¶27}** Six has not demonstrated that, but for the error in the Complaint, the outcome at trial would have been different. *Carter*, 89 Ohio St.3d at 598; *State v. Batich*, 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶ 22, 26-38 (insufficient showing that, but for the error in the indictment of failing to contain a required element, the outcome of the trial would have been different or that there was a manifest injustice in the trial court's failure to instruct the jury on the element

of the offense).  We do not find exceptional circumstances that would necessitate preventing a manifest miscarriage of justice.  Six is not entitled to plain-error relief.

### B.      Second Assignment of Error

{¶28} In her second assignment of error, Six argues the trial judge erred by allegedly conducting her own examination of Six's expert, Burch, in the jury's presence and by permitting the State to conduct a voir dire examination of Burch in the jury's presence.  Six argues the judge committed plain error that deprived her of a fair trial.  She claims the trial court "impermissibly cast its own opinions and doubts regarding Mr. Burch's knowledge and experience to the jury and prejudiced Ms. Six."  (Appellant's Brief at 13).

### i.      Standard of Review

{¶29} Typically, we would review this alleged error under an abuse of discretion standard.  *See Yurkowski v. Univ. of Cincinnati*, 10th Dist. Franklin No. 11AP-974, 2013-Ohio-242, ¶ 60 ("[b]ecause Evid.R. 614(B) permits the trial court discretion to decide whether or not to question a witness, appellate courts must review the trial court's questioning under an abuse of discretion standard"); *see also* Evid.R. 104(C); Evid.R. 611.  However, because Six failed to timely object, Six concedes we review the alleged error only for plain error.  *State v. Clark*, 10th Dist. Franklin No. 19AP-300, 2021-Ohio-559, ¶ 64; Evid.R. 614(C) ("[o]bjections to * * * interrogation by [the court] may be made at the time or at the next available opportunity when the jury is not present"); Crim.R. 52.  The plain-error standard is

-18-

set forth above in our discussion of the first assignment of error. In short, to qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning the error "must have affected the outcome of the trial." *Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, at ¶ 36.

### ii.    Applicable Law

{¶30} Under Evid.R. 702, a witness may only testify as an expert if certain requirements are met. Among those requirements are that "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons" and that "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(A) and 702(B). The court determines "[p]reliminary questions concerning the qualification of a person to be a witness." Evid.R. 104(A). Hearings on any preliminary matters other than the admissibility of confessions need only "be conducted out of the hearing of the jury when the interests of justice require." Evid.R. 104(C). "[Q]ualification of experts is routinely done in the presence of the jury." *Anousheh v. Planet Ford, Inc.*, 2d Dist. Montgomery Nos. 21960 and 21967, 2007-Ohio-4543, ¶ 62 (rejecting an argument that the trial court improperly conducted an examination of the expert's qualifications in the jury's presence).

-19-

**{¶31}** Additionally, the rules of evidence allow the trial court to "interrogate witnesses, in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). "Evid.R. 614(B) allows the trial court to fulfill its obligation to control the proceedings before it, to clarify ambiguities, and to take steps to ensure substantial justice." *R.T. v. Knobeloch*, 10th Dist. Franklin No. 16AP-809, 2018-Ohio-1596, ¶ 57. However, "[d]uring a jury trial, courts must be careful with their questioning of witnesses because there is a potential for the jury to be prejudicially influenced by the judge's actions." *State v. Gervin*, 3d Dist. Marion No. 9-15-52, 2016-Ohio-8399, ¶ 188. Absent a showing of bias, prejudice, or prodding a witness to elicit partisan testimony, it is presumed the trial court acted with impartiality in its questions from the bench in attempting to ascertain a material fact or to develop the truth. *Id.* at ¶ 185; *Yurkowski*, 2013-Ohio-242, at ¶ 62. "A trial court's questioning of a witness is not impartial merely because it elicits evidence that is damaging to one of the parties." *Clark*, 2021-Ohio-559, at ¶ 63.

### iii. Analysis

**{¶32}** First, regarding conducting the voir dire examination of Burch in the jury's presence, the trial judge qualified Burch as an expert. Thus, even assuming, arguendo, that Burch should have been qualified outside the presence of the jury, any error was harmless. *State v. Tilley*, 2d Dist. Montgomery No. 19198, 2002-Ohio-6776, ¶ 24 (although the expert should have been qualified outside the presence of the jury, the error was harmless "given the correctness of permitting

[the person] to testify as an expert"); *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 62 (same).

**{¶33}** Second, regarding Six's assertion that the judge's questioning of Burch impermissibly prejudiced her, we likewise hold that any error in the judge's questioning—assuming there was error—was harmless. Contrary to Six's assertion, the judge's questioning of Burch cannot be fairly labeled as the trial court "impermissibly cast[ing] its own opinions and doubts regarding Mr. Burch's knowledge and experience to the jury." (Appellant's Brief at 13). Most of the questions were simply for clarification purposes. *Gervin*, 2016-Ohio-8399, at ¶ 187 (no error in portion of trial court's questioning where "the court was attempting to clarify"). Additionally, all of the questions posed related to Burch's background and qualifications to be an expert so that the judge could determine whether to grant Six's counsel's request that Burch be deemed an expert. Following questioning by Six's counsel, the State's counsel, and the judge (*all* in front of the jury *without objection* by Six), the judge qualified Burch as an expert. Any notion that the judge implied to the jury she believed Burch did not possess the necessary qualifications to be an expert is directly contradicted by the fact the judge qualified Burch as an expert. Furthermore, in her instructions to the jury, the judge told the jury: "The jury decides the disputed facts * * *. If during the trial I said or did anything that you considered to be an indication of my view of the facts, you are instructed to

disregard it." (Dec. 7, 2022 Tr. at 499, 508). Because Six is not entitled to plain-error relief, her second assignment of error is overruled.

### C. Third Assignment of Error

{¶34} In her third assignment of error, Six argues the trial court erred by allegedly permitting multiple Crim.R. 16 discovery violations to occur that denied her from obtaining material evidence. More specifically, she argues the State failed to produce the "147 data points" allegedly gathered and relied upon by Sergeant Banta and failed to produce the written eyewitness statement of Sean Galleher given to an investigating officer. Six argues these failures caused her substantial prejudice and deprived her of a fair trial.

{¶35} Criminal Rule 16 relates to discovery and inspection. The rule requires an expert witness to "prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications." Crim.R. 16(K). The rule also requires the prosecutor, upon receipt of a written demand for discovery by the defendant, to provide copies of "[a]ny written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal," that are "within the possession of, or reasonably available to[,] the state * * *." Crim.R. 16(B)(7). "Violations of Crim.R. 16 by the prosecution may result in reversible error only upon a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the

-22-

accused in preparing a defense, and (3) the accused has suffered prejudice." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 38.

{**¶36**} In response to Six's arguments in this assignment of error, the State said that it "employs an 'open discovery' practice" and had fully complied with the requirements of Crim.R. 16. (Appellee's Brief at 8). The State stressed that Sergeant Banta had only testified he *believed* he had submitted an excel spread sheet containing the 147 data points to the prosecutor's office, and the prosecutor's office never received a request for such a document and never possessed such a document. The State also said that eyewitness Galleher likewise had only testified he *believed* he had given a statement to a law enforcement officer (*see* Dec. 6, 2022 Tr. at 238), and the prosecutor's office never possessed a written statement from Galleher. The State made a professional statement to the court that no such document has been found or exists. (Appellee's Brief at 9).

{**¶37**} Six has not shown any failure to disclose by the State. Moreover, even assuming she had shown a failure to disclose, Six has not shown that "the prosecution's failure to disclose was a willful violation of" Crim.R. 16. *LaMar* at ¶ 38; *see also State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995) (affirming conviction where there was no indication that the failure to disclose was willful). Six also has not shown she suffered prejudice. For these independent reasons, there was no reversible error.

-23-

## IV.    CONCLUSION

**{¶38}** For the foregoing reasons, Six's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Marion Municipal Court.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur**

**/eks**